**UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION**

**LEONARD HAGGINS,**

      **Petitioner,**

**v.**                                  **Case No. 8:17-cv-2280-T-35AEP**

**SECRETARY, DEPARTMENT
OF CORRECTIONS,**

      **Respondent.**

_____/

## O R D E R

This cause is before the Court on Petitioner Leonard Haggins's timely-filed *pro se* petition for the writ of habeas corpus under 28 U.S.C. § 2254. (Doc. 1) Upon consideration of the petition, the response (Doc. 7), and the reply (Doc. 12), and in accordance with the *Rules Governing Section 2254 Cases in the United States District Courts*, it is **ORDERED** that the petition is **DENIED**:

## PROCEDURAL BACKGROUND

The State of Florida charged Haggins and a co-defendant, Michael Lee Jacobs, with robbery with a firearm (counts one and two) and burglary of an occupied dwelling with assault or battery (count five).  (Doc. 9 Ex. 1 Vol. I at 24-27)[1] Haggins and Jacobs were tried together. The jury convicted Haggins of the lesser-included offenses of robbery with a weapon (counts one and two), and burglary of an occupied dwelling (count five). (Doc. 9 Ex. 1 Vol. I at 89-90) The state court sentenced Haggins to concurrent terms of 30 years as a prison releasee reoffender on counts one and two and 15 years as a prison

---

[1] Counts three, four, and six were brought only against Jacobs. (Doc. 9 Ex. 1 Vol. I at 24-27)

1

releasee reoffender on count five. (Doc. 9 Ex. 1 Vol. I at 120-27) The state appellate court *per curiam* affirmed the convictions and sentences. (Doc. 9 Ex. 4)

Haggins filed a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. (Doc. 9 Ex. 6) The state court denied the motion, and the state appellate court *per curiam* affirmed the denial of relief. (Doc. 9 Exs. 7, 10, 13)

### FACTS[2]

In the early morning hours of September 28, 2010, Whitney Johnson-House and Keanna Everett were at Everett's apartment getting ready to go to a club. Everett went outside to look for a pair of shoes in her car. While outside, Everett spoke on her cell phone to her sister, Kenyarta Gaines. Everett heard a noise and saw two men wearing black clothing and black ski masks running towards her.

The taller man, later identified as co-defendant Jacobs, grabbed Everett by the neck and pushed her into the apartment. The shorter man, later identified as Haggins, entered the apartment at the same time. Jacobs threw Everett to the floor, put his knee on her back, and held her hair. Jacobs asked her where the money was. Haggins ordered Johnson-House to lie on the floor. Haggins also began asking where the money was. Johnson-House said that she had money in her purse, and told the men to take the money from her purse and get out. Haggins opened Johnson-House's purse and took money from it. Jacobs hit Everett and Johnson-House in the head with his gun when they tried to look up. He also hit Everett in the head with the gun when she told him that she did not have any money. Jacobs told Haggins to look around, and Haggins ransacked the

---

[2] This factual summary is derived from the trial transcript and appellate briefs.

apartment. After taking Everett's necklace, Jacobs pulled Everett off the floor and dragged her into the kitchen.

Meanwhile, Kenyarta Gaines's call with Everett remained connected for a time after Jacobs pushed Everett into the apartment. When Gaines heard yelling, she called 911 and drove to Everett's apartment. Police officers quickly responded to the apartment complex. When Gaines arrived, she identified the exact apartment for police. After police knocked on the apartment door, Jacobs opened the door and sprinted past the officers. Police followed Jacobs and detained him a short time later. Police recovered a gun within several feet of the location Jacobs was detained. Inside Jacobs's pocket, police found a magazine compatible with the gun, along with Everett's necklace.

Back at the apartment, police found Haggins hiding inside a bedroom closet wearing gloves and a ski mask, but they did not find any cash or other items on his person. After receiving *Miranda*[3] warnings, Haggins made an incriminating statement at the scene. Haggins explained that he thought a significant amount of money was inside the apartment because he believed Everett and Johnson-House to be involved in identity theft, credit card theft, and tax refund fraud.[4]

## STANDARDS OF REVIEW

### I.   AEDPA

The Antiterrorism and Effective Death Penalty Act ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] Everett acknowledged that she had previously been investigated, but stated that she was uncertain whether she was still under investigation for "fraudulent-type conduct" at the time of trial. (Doc. 9 Ex. IV at 422-23)

can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. 362, 413 (2000). A decision involves an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.*

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694; *see also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court, a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an

error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed Haggins's convictions and sentences, as well as the denial of postconviction relief, without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore*, 278 F.3d 1245, 1254 (11th Cir. 2002). When a state appellate court issues a silent affirmance, "the federal court should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale" and "presume that the unexplained decision adopted the same reasoning." *Wilson v. Sellers*, 138 S.Ct. 1188, 1192 (2018).

## II.    Ineffective Assistance of Counsel

Ineffective assistance of counsel claims are analyzed under the test established in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. Deficient performance is established if, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

Haggins must show that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691. To demonstrate prejudice, Haggins must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.

A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694.

Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas review because "[t]he standards created by *Strickland* and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." *Richter*, 562 U.S. at 105 (internal quotation marks and citations omitted); *see also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (stating that this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt."). "The question [on federal habeas review of an ineffective assistance claim] 'is not whether a federal court believes the state court's determination' under the *Strickland* standard 'was incorrect but whether that determination was unreasonable—a substantially higher threshold.'" *Knowles v. Mirzayance*, 556 U.S. 111, 123 (2009) (quoting *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007)).

## EXHAUSTION OF STATE REMEDIES; PROCEDURAL DEFAULT

A federal habeas petitioner must exhaust his claims in state court before presenting them in his federal habeas petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition."). The exhaustion requirement is satisfied if the petitioner fairly presents his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). "The purpose of the exhaustion requirement is straightforward: the petitioner must have given the state courts a meaningful opportunity to address his federal claim. . . . The crux of the exhaustion

requirement is simply that the petitioner must have put the state court on notice that he intended to raise a federal claim." *Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 457 (11th Cir. 2015) (internal quotation marks and citation omitted).

"If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established." *Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001); *see also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile. . . . A habeas petitioner can escape the procedural default doctrine either through showing cause for the default and prejudice . . . or establishing a 'fundamental miscarriage of justice.'").

## DISCUSSION

### Ground One

Haggins contends that the trial court erred in denying his motion for mistrial after a prosecution witness, Officer Evan Trefcer, improperly commented on Haggins's right to remain silent. As Haggins does not specifically raise a federal claim in his petition, it is not apparent whether he asserts a violation of state or federal law. (Doc. 1 at 5-7) Both the United States and Florida Constitutions provide that no person shall be compelled to be a witness against himself in a criminal case. *See* U.S. Const. amend. V; Art. I, § 9, Fla. Const. Even liberally construing his claim as alleging a Fifth Amendment violation, however, Haggins cannot obtain relief.

Any Fifth Amendment claim is unexhausted because Haggins failed to raise the federal nature of the claim on appeal. Haggins did not name any federal constitutional provisions, rely on federal authority, or otherwise identify his claim as federal when he argued that the trial court erred in denying his motion for mistrial. (Doc. 9 Ex. 2 at 11-14) His argument relied solely on state law. (Doc. 9 Ex. 2 at 11-14) Specifically, Haggins relied on the state law standard for reviewing allegedly impermissible comments on silence set out in *State v. DiGuilio*, 491 So.2d 1129 (Fla. 1986), which differs from the federal standard. *See id.* at 1135 ("In Florida, we have adopted a very liberal rule for determining whether a comment constitutes a comment on silence: any comment which is 'fairly susceptible' of being interpreted as a comment on silence will be treated as such."); *see also State v. Horwitz*, 191 So.3d 429, 439 (Fla. 2016) ("[T]he privilege against self-incrimination provided in the Florida Constitution offers *more* protection than the right provided in the Fifth Amendment to the United States Constitution.") (citation omitted) (emphasis in original).

Accordingly, the Court concludes that Haggins failed to exhaust a federal claim in state court. State procedures do not provide for second direct appeals. *See* Fla. R. App. P. 9.140(b)(3) (stating that a notice of appeal must be filed within 30 days of rendition of the sentence). Therefore, Haggins's claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Haggins has not argued or established that an exception applies to excuse the procedural default. *See id.*

Alternatively, even assuming that Haggins's reference to his "right to remain silent" was sufficient to raise a Fifth Amendment claim on appeal, Haggins is not entitled to relief. He has not met his burden under the AEDPA of establishing that the state court's rejection

of his Fifth Amendment claim was contrary to or involved an unreasonable application of clearly established federal law.

Before trial, co-defendant Jacobs moved to sever his trial from Haggins's trial because Haggins made post-*Miranda* statements to law enforcement that implicated Jacobs. The Court permitted a joint trial after the State responded that it would exclude a portion of Haggins's statements at the scene and the entirety of Haggins's statements at the police station, which implicated Jacobs.[5]

On direct examination, Officer Trefcer testified about bringing Haggins to the police station following his arrest (Doc. 9 Ex. 1 Vol. 5 at 514):

Q: Did you - - were you the person who transported Mr. Haggins to the district, to Tampa Police Department?

A: Yes, I was.

Q. And when you transported him there and took him out of your patrol car and brought him into the district - -

A. Uh-huh.

Q. - - did he still have his ski mask on and his gloves?

A. Yes, he did.

Q. What did you do with Mr. Haggins then once you dropped him off? I know you didn't drop him off and let him go right after - -

A. I put him in our temporary detention area waiting to be interviewed by one of our detectives.

Counsel immediately objected to Officer Trefcer's answer and moved for a mistrial. Counsel argued that despite the trial court's determination that Haggins's "interview by a

---

[5] The court agreed with the State's argument that this arrangement would avoid a violation of *Bruton v. United States*, 391 U.S. 123 (1968). *Bruton* held that the admission of a co-defendant's confession inculpating a defendant violated the defendant's Fifth Amendment right to confrontation at a joint trial where the co-defendant did not testify. (Doc. 9 Ex. 1 Vol. II at 4-31)

detective was not going to be entered into evidence . . . [t]his jury has now heard that he was transported there to be interviewed." (Doc. 9 Ex. 1 Vol. V at 515) Counsel continued (Doc. 9 Ex. 1 Vol. V at 516):

> This is the equivalent of a State witness commenting on a defendant's invocation of his Miranda, his constitutional rights under Miranda. And it's also going to leave in this jury's mind, "Well, he was transported to be interviewed by the detective. What happened to this interview?" It's in direct violation of the motion in limine order, the orders of the Court regarding the motion to sever.

The trial court made the finding "that based upon what I've heard and arguments counsel made, I don't believe that this response implies in any way that Mr. Haggins was or was not questioned at the station." (Doc. 9 Ex. 1 Vol. V at 532) Thus, the court concluded that the statement did not warrant a mistrial. (Doc. 9 Ex. 1 Vol. V at 532-33)

Haggins asserts here, as counsel did in state court, that because Officer Trefcer said Haggins was "waiting to be interviewed" at the police station, but the jury never heard any evidence about such an interview, Officer Trefcer's statement impermissibly implied that Haggins must have remained silent. Haggins has not established that the comment was improper.[6] To show that a comment was an improper remark on a defendant's silence, the comment must either (1) be manifestly intended as a comment on defendant's silence; or (2) be of such a character that a jury would naturally and necessarily take it to be a comment on the defendant's silence. *United States v. Blankenship*, 382 F.3d 1110, 1128 (11th Cir. 2004) (citing *United States v. Knowles*, 66 F.3d 1146, 1162-63 (11th Cir.

---

[6] To the extent resolution of this claim rests on an application of Florida's standard for a mistrial, this Court must defer to the state court's application of that standard. *See Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) ("It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters." (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997))).

1995)). A movant has the burden of proving one of these two criteria. *Knowles*, 66 F.3d at 1163.

This determination must be made by examining the comment in the context of the proceedings. *See United States v. Zitron*, 810 F.3d 1253, 1259 (11th Cir. 2016) (addressing a witness's allegedly improper comment on silence and stating that to determine the "natural and necessary effect of allegedly impermissible comments, we must examine the comments in the context within which they were made." (citing *United States v. Guerra*, 293 F.3d 1279, 1289 (11th Cir. 2002) and *Williams v. Wainwright*, 673 F.2d 1182, 1184 (11th Cir. 1982))); *United States v. Dorsey*, 414 F. App'x 206, 210 (11th Cir. 2011)[7] (stating that in analyzing whether a witness's answer was an impermissible comment on a criminal defendant's right to remain silent, a court "must consider whether the statement, in context, was manifestly intended or was of such character that a jury would naturally and necessarily take it to be a comment on the failure of accused to testify." (citing *United States v. Chastain*, 198 F.3d 1338, 1351-52 (11th Cir. 1999))).

Haggins has not shown that the state court unreasonably rejected his claim. First, Haggins does not establish that Officer Trefcer's comment was manifestly intended as a comment on Haggins's right to remain silent. As the record shows, and as inherently acknowledged in Haggins's argument, Officer Trefcer did not state whether or not Haggins spoke at the police station. Rather, Officer Trefcer merely answered that he left Haggins in a detention area waiting to be interviewed by a detective. Nothing about this comment suggests that Haggins invoked his right to remain silent or refused to talk to police. Rather, the transcript suggests that Officer Trefcer simply answered the

---

[7] "Unpublished opinions are not considered binding precedent, but they may be cited as persuasive authority." 11th Cir. Rule 36-2.

prosecutor's question by giving a thorough response that explained the full scope of his knowledge about the circumstances. *See United States v. LeQuire*, 943 F.2d 1554, 1565 (11th Cir. 1991) ("No manifest intent exists where another, equally plausible explanation for the remark is present." (citing *United States v. Carrodeguas*, 747 F.2d 1390, 1395 (11th Cir. 1984))).

Second, Haggins has not established that the jury would "naturally and necessarily" take Officer Trefcer's remark, when considered in context, as a comment on Haggins's silence. "The question is not whether the jury possibly or even probably would view the remark" as a comment on silence, "but whether the jury *necessarily* would have done so." *United States v. Carter*, 760 F.2d 1568, 1578 (11th Cir. 1985) (citations omitted) (emphasis in original).

As addressed, Officer Trefcer made no direct comment on Haggins's silence. Therefore, the jurors would have been required to infer later in the trial, after hearing no further evidence of a police station interview, that Haggins must have decided not to talk to police. The jury could just as easily have inferred that Haggins did give an interview and that it was either not helpful or was excluded for some other reason. Because Haggins can only speculate that the jury might have drawn such an inference at a later point in the proceedings, he fails to show that the jury "naturally and necessarily" would have taken Officer Trefcer's comment as one on Haggins's right to remain silent. *See, e.g., Wood v. Bartholomew*, 516 U.S. 1, 8 (1995) (stating that a federal court may not grant habeas relief "on the basis of little more than speculation with slight support."); *see also Zitron*, 810 F.3d at 1259 (finding no Fifth Amendment violation and noting that the witness did not directly refer to the defendant's failure to testify); *Williams*, 673 F.2d at

12

1185 (holding that a jury would not necessarily have taken a prosecutor's statement as a comment on the defendant's silence because the prosecutor did not directly mention the defendant's failure to testify).

Haggins has not met his burden under the AEDPA of showing that the state court's rejection of his claim, if it was determined under federal law at all,  was contrary to or an unreasonable application of clearly established federal law. Accordingly, Haggins is not entitled to relief on Ground One.

**Ground Two**

Haggins argues that the trial court erred in instructing the jury prior to deliberations that the court generally could not answer any questions "that deal with testimony." Haggins contends that the trial court's instruction inaccurately suggested to the jury that readbacks of testimony were prohibited. Haggins does not allege a federal constitutional claim in his habeas petition; rather, his claim plainly involves the correctness of the jury instructions under Florida law. Accordingly, Haggins's claim is not cognizable in this § 2254 proceeding. *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").

Even if Ground Two of the petition could be liberally construed as raising a federal due process violation, however, any federal claim is unexhausted because Haggins did not raise the federal nature of the claim in state court. On direct appeal, when Haggins claimed that the trial court gave an erroneous instruction, he did not raise any federal claim or cite any federal authority. (Doc. 9 Ex. 2 at 15-17) Rather, Haggins relied exclusively on state law in presenting this claim. (Doc. 9 Ex. 2 at 15-17) Haggins's failure to alert the state appellate court that he intended to raise a federal claim leaves the

exhaustion requirement unsatisfied. *See Preston*, 785 F.3d at 457. Haggins cannot return to state court to present a federal claim in a second appeal. Therefore, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Haggins has not argued or demonstrated that an exception applies to overcome the default. *See id.* Accordingly, Ground Two is barred from review and cannot warrant relief.

**Ground Six**

Haggins asserts that trial counsel was ineffective in not objecting to the trial court's instruction to the jury addressed in Ground Two, *supra*. The state court denied Haggins's ineffective assistance claim (Doc. 9 Ex. 7 at 60-61) (court's record citation omitted):

> In ground four, the Defendant argues counsel was ineffective for failing to object when the trial court implied that the jury could not request that testimony be read back. Prior to jury deliberations, the Court stated:
>
>> Also, with respect to questions, please understand generally we cannot answer questions that deal with testimony. What I mean by that, you have to rely on your recollection to whatever answers witnesses gave to whatever questions were asked of them. We cannot give you answer [sic] to a question that was asked, nor can we explain an answer the witness gave.
>
> After considering the record, the Court finds this statement did not imply that reading testimony back was prohibited. The Court further finds that any allegation that the jury would have requested a read-back of testimony is speculative. As such, ground four is denied.

Immediately prior to giving the instruction quoted in the state court's order, the trial judge said (Doc. 9 Ex. 1 Vol. VI at 751):

> With respect to questions, let me say the following several things. First of all, if you do submit a question to us, I require you do so in writing. And before I can get back with you with a response, what I must do by law is the following: I have to get the lawyers together, the defendants, the clerk, the court reporter and discuss your question to determine first, is it something we can answer, if so, how do we go about answering it.

14

If you do submit a question to us, there will be some delay in us getting back to you.

Haggins has not met his burden under the AEDPA to show that the state court unreasonably applied *Strickland* in rejecting his claim. Florida law permits the re-reading of testimony. *Jackson v. State*, 641 So.2d 1369, 1370-71 (Fla. 1st DCA 1994). The court's instruction did not imply that the re-reading of testimony was prohibited. In the course of informing the jurors about procedures used to ask questions, the judge simply stated that the judge and the attorneys could not tell the jury what a witness's testimony was or explain what testimony meant. Because the instruction did not imply that a readback was prohibited, the state court reasonably concluded that counsel was not ineffective in failing to object.

Even if the comment is interpreted as discouraging a readback of testimony, however, Haggins fails to show that the state court unreasonably denied relief on the basis that Haggins's claim was too speculative to demonstrate ineffective assistance. Conclusory and speculative assertions are insufficient to demonstrate entitlement to relief on an ineffective assistance of counsel claim on federal habeas review. *See Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (stating that a petitioner's vague and conclusory statements, unsupported by specific facts, cannot sustain an ineffective assistance claim).

The jury did not ask any questions during deliberations (Doc. 9 Ex. 1 Vol. VI at 755-66), and Haggins does not point to any evidence suggesting that the jurors were confused about any evidence or wanted further information. Accordingly, Haggins can only speculate that the jury might have been confused about some portion of testimony and would have requested a readback of trial testimony if not for the court's instruction.

15

Further, even if the jury had requested a readback of testimony, the court would have had significant discretion to deny or grant the request. *See* Fla. R. Crim. P. 3.410(b)(2) (providing that a jury's request to have any testimony read or played back "may or may not be granted at the court's discretion."). Thus, Haggins's claim is too speculative to establish a reasonable probability that the outcome of the proceedings would have been different had counsel objected and the jury been instructed they could, if needed, request a readback of testimony. Accordingly, Haggins has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. Haggins is not entitled to relief on Ground Six.

**Ground Three**

In Ground Three, Haggins argues that trial counsel was ineffective in failing to impeach Keanna Everett with inconsistent prior statements from her deposition. Count one charged Haggins and Jacobs with robbery for taking Everett's necklace. (Doc. 9 Ex. 1 Vol. I at 25)

Section 812.13(1), Fla. Stat. (emphasis added), defines robbery as:

[T]he taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money or other property, **when in the course of the taking there is the use of force, violence, assault, or putting in fear**.

Haggins contends that at her deposition, Everett testified when asked about her jewelry (Doc. 1 at 8-9):[8]

Q. Now let me ask you about the jewelry. At what point in time was that taken from you.

---

[8] Haggins notes that the deposition transcript is not included in the record before this Court. However, in his federal habeas petition, his Rule 3.850 motion, and his Rule 3.850 appeal, Haggins quoted a portion of the deposition that he believes supports his claim. (Doc. 1 at 8-9; Doc. 9 Ex. 6 at 30-31; Doc. 9 Ex. 11 at 7) The Court accepts Haggins's representation of the deposition transcript for purposes of resolving this claim.

A. When I was on the ground.

Q. When you were on the ground?

A. Yes.

Q. Was this jewelry you were wearing?

A. Yes.

Q. And did you give the jewelry up?

A. Yes.

Q. Did they ever demand or ask you for the jewelry?

A. No.

Q. They just demanded money?

A. Yes.

Q. Did you ever tell the police that you handed them your ring but the armed suspects told you that the ring wasn't enough?

A. Yes.

Q. Okay. And I'll ask you again. Because I just asked you that when I asked you a moment ago, did they ever demand your ring or jewelry from you, you said no.

A. He didn't demand it. I just handed [it] to him and he said Bitch, I don't want this.

Q. And that was about your ring?

A. Yes. He didn't take the ring. He put the necklace in his pocket.

At trial, Everett testified that she gave Jacobs her ring but that he did not want the ring. (Doc. 9 Ex. 1 Vol. IV at 406) Everett then testified that she gave Jacobs the necklace she was wearing (Doc. 9 Ex. 1 Vol. IV at 408, 410-11):

Q. Did you try and give the tall guy anything else besides that ring?

17

A. Yes.

Q. Tell me about that.

A. The chain off my neck.

Q. Okay. How did that happen?

A. I was like, "here, you can have my chain." I was like, "You can have it." And I was lifting it up. He - - I think he helped me take it off and he looked at it and he put it in his pocket.

. . .

Q. Ms. Everett, why did you give the tall guy this necklace?

A. Because I didn't have any money.

Q. How are you feeling at that moment?

A. Scared.

Q. At any point that evening, were you ever in fear for your life?

A. Yes.

Q. Did you give this necklace to him against your will?

    [Counsel for Jacobs]: Objection; leading.

A. Yes.

    The COURT: Sustained.

    Counsel, let's let the witness explain, please; not you.

    [State]: Judge, may we approach on that issue?

    THE COURT: No, ma'am.

Q. The fact that you gave him that necklace was or was that not against your will?

    [Counsel for Jacobs]: Objection; leading.

THE COURT: Overruled.

A. Against my will.

In his postconviction motion, Haggins argued that Everett's deposition testimony showed there was no "force, violence, assault, or putting in fear" in the course of the taking because Everett did not say—unlike in her trial testimony—that she gave Jacobs the necklace against her will. Thus, Haggins claims that if counsel had impeached Everett with her deposition testimony, the impeachment "would have negated an essential element of the charged offense." (Doc. 1 at 9) The state court denied Haggins's ineffective assistance claim (Doc. 9 Ex. 7 at 59-60) (court's record citations omitted):

> In ground one, the Defendant alleges counsel was ineffective for failing to impeach Keanna Everett regarding her inconsistent pretrial statements. The Defendant alleges Ms. Everett testified at deposition that one of the defendants demanded money from her. She stated the defendants never asked for jewelry, but she offered to give him her ring and her necklace. The Defendant argues counsel should have cross examined Ms. Everett to establish that no force, violence, assault, or putting in fear was used with regards to the jewelry because the defendants were only interested in money. The Defendant alleges the victim voluntarily gave her necklace away.

> At trial, Ms. Everett testified that two men forced their way into her home and demanded money. She told the taller man that she did not have any money. Ms. Everett testified that she tried to give him her diamond ring, but he did not want it. She stated, "here, you can have my chain," and the man took her necklace and put it in his pocket. Ms. Everett then testified that she was scared and gave him her necklace against her will.

> After considering the Defendant's motion and the record, the Court finds Ms. Everett's testimony regarding whether she voluntarily gave the codefendant her necklace was consistent with her pretrial statements, and counsel was not ineffective for failing to impeach her. As such, ground one is denied.

Haggins fails to show that the state court unreasonably applied *Strickland*. The state court found that counsel was not ineffective in failing to impeach Everett because

19

Everett's testimonies were consistent. Everett's deposition testimony reflects that she gave Jacobs her jewelry when she was on the ground after the perpetrators demanded money of her. Thus, while Everett's trial testimony was more detailed, it was not inconsistent with her deposition testimony.

Under Florida law, however, counsel could have attempted to impeach Everett with an omission. *See Varas v. State*, 815 So.2d 637, 640 (Fla. 3d DCA 2001) ("It is well-settled that a witness may be impeached by a prior inconsistent statement, including an omission in a previous out-of-court statement about which the witness testifies at trial, if it is of a material, significant fact rather than mere details and would naturally have been mentioned."). Even assuming that counsel performed deficiently in failing to impeach Everett with her deposition testimony, however, Haggins cannot show that he was prejudiced by counsel's omission.[9]

As addressed, under the robbery statute, the State had to prove beyond a reasonable doubt that "violence, force, assault, or putting in fear" was used in the course of the taking. § 812.13(1), Fla. Stat.[10] Haggins does not show a reasonable probability that the outcome of trial would have been different had counsel impeached Everett with the identified deposition testimony in an attempt show that this element was not proven.

As Everett did not resist during the taking, the "putting in fear" component applied to this case. *See Robinson v. State*, 692 So.2d 883, 886 (1997) (holding that, other than

---

[9] The state court did not expressly address *Strickland*'s prejudice prong. Even conducting a *Strickland* prejudice analysis *de novo*, Haggins is not entitled to relief. *See, e.g., Johnson v. Sec'y, DOC*, 643 F.3d 907, 930-35 (11th Cir. 2011) (applying *Strickland*'s prejudice prong *de novo* upon finding that the state court's decision, which only addressed *Strickland*'s deficient performance prong, was contrary to or involved an unreasonable application of clearly established federal law set out in *Strickland*).

[10] An act is "deemed 'in the course of the taking' if it occurs either prior to, contemporaneous with, or subsequent to the taking of the property and if it and the act of taking constitute a continuous series of acts or events." § 812.13(3)(b), Fla. Stat.

circumstances involving robbery by intimidation, the statute requires "resistance by the victim that is overcome by the physical force of the offender."). *Magnotti v. State*, 842 So.2d 963, 965 (Fla. 4th DCA 2003) explains the meaning of the term "putting in fear":

> "The fear contemplated by the statute is the 'fear of death or great bodily harm.'" *Smithson*, 689 So.2d at 1228 (quoting *Brown v. State*, 397 So.2d 1153, 1155 (Fla. 5th DCA 1981)). The rule in this regard is that if the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable person, then the victim may be found to be in fear for the purpose of the robbery statute, and actual fear need not be proved. *See State v. Baldwin*, 709 So.2d 636 (Fla. 2d DCA 1998). Thus, the controlling factor is not necessarily the victim's subjective state of mind, but whether a jury could conclude that a reasonable person, under the circumstances, would have felt sufficiently threatened to accede to the robber's demands. *See Woods v. State*, 769 So.2d 501 (Fla. 5th DCA 2000).

The objective nature of this inquiry is also underscored in *Delgado v. State*, 105 So.3d 612, 613 (Fla. 4th DCA 2013), which provides that, "[u]nder Florida law, for there to be a 'fear'-based robbery within the meaning of the statute, the trier of fact must determine whether the defendant's conduct would have placed a reasonable person, not just the actual victim, in fear of death or great bodily harm" and *Diaz v. State*, 14 So.3d 1156, 1158 (Fla. 4th DCA 2009), which states that, "[t]he 'putting in fear' element of robbery is determined not by whether the victim himself was actually placed in fear, but by whether a reasonable person under the circumstances would be placed in fear."

The State presented significant evidence that tactical fear was employed during the course of the taking. The taking occurred during an episode where Jacobs pushed Everett inside the apartment, threw her to the ground and held her down, demanded money while Haggins also demanded money of the victims and ransacked the apartment. Additionally, the victim was physically assaulted with a weapon when she tried to look up and when she told Jacobs that she did not have any money.

Haggins does not argue or establish that this evidence was insufficient for the jury to conclude that "the circumstances attendant to the robbery were such as to ordinarily induce fear in the mind of a reasonable person" of death or great bodily harm if she did not accede in some way to the perpetrators' repeated demands. *Magnotti*, 842 So.2d at 965.

Considering the totality of the State's evidence showing that "putting in fear" was deployed in the course of taking the necklace, as required by the robbery statute, Haggins does not show a reasonable probability of a different outcome at trial had counsel cross-examined Everett as Haggins proposes. Accordingly, he fails to meet *Strickland*'s prejudice prong. Haggins has not shown entitlement to relief on Ground Three.

**Ground Four**

Haggins argues that trial counsel was ineffective for failing to "investigate and obtain victim Whitney Johnson-House's bank account." (Doc. 1 at 9) Johnson-House testified that on the day of the offenses, she withdrew $400.00 at an ATM. (Doc. 9 Ex 1 Vol. IV at 292-93) She testified that Haggins took the money from her purse. (Doc. 9 Ex. 1 Vol. IV at 284) Haggins contends that an investigation would have shown that Johnson-House did not in fact withdraw $400.00 that day.

The state court conducted an evidentiary hearing on this claim. At the hearing, Haggins testified that he told counsel he did not take money from Johnson-House and that he asked counsel to investigate Johnson-House's allegation that she withdrew money from the ATM and that he attempt to obtain documents showing that "she never withdrew this money and never possessed it." (Doc. 9 Ex. 10 at 201-02) Haggins stated

that he believed an investigation would show that Johnson-House was not credible. (Doc. 9 Ex. 10 at 202)

Trial counsel testified to his belief that an investigation into whether Johnson-House withdrew $400.00 from ATM that day was not necessary. Counsel explained that the fact that no money was recovered from Haggins "gave us a very good defensive argument to be able to say that he's found at the scene and he doesn't have this $400 on him. That certainly affected her credibility." (Doc. 9 Ex. 10 at 209) Following the hearing, the state court denied Haggins's ineffective assistance claim (Doc. 9 Ex. 10 at 189-90):

> In ground two, the Defendant alleges counsel was ineffective for failing to investigate and obtain victim Whitney Johnson-House's bank account records to demonstrate that she had not withdrawn $400 that day, as she had testified. The defendant asserts that Ms. Johnson-House had testified that the Defendant took the $400 out of her purse. However, the defendant asserts he advised counsel that he looked in her purse but never found any money. He further argues that when he and the codefendant were arrested, no money was found in their possession. At the hearing on the Defendant's motion, trial counsel [ ] testified that he did not find it necessary to obtain Ms. Johnson-House's bank account records because he felt their best argument was that the Defendant was found at the scene, and no money was found in his possession or in the victim's apartment. No testimony or evidence was presented at the hearing to establish the victim did not withdraw $400 from her bank account. After considering the Defendant's motion, the testimony presented at the evidentiary hearing, and the record, the Court finds the defendant has failed to meet his burden regarding this claim. As such, ground two is denied.

It is undisputed that the police did not find any money on Haggins when he was taken into custody at the scene. As counsel's evidentiary hearing testimony suggests, even in the absence of bank records, counsel argued to the jury that the fact the money was never recovered cast doubt on Johnson-House's credibility and also showed that the State failed to prove its case beyond a reasonable doubt. (Doc. 9 Ex. 1 Vol. VI at 683-84, 686-87, 690)

Under these circumstances, Haggins fails to show that counsel was ineffective in not investigating Johnson-House's bank records in an effort to reinforce the point counsel made through other argument. It is apparent from counsel's testimony that the decision not to explore whether Johnson-House withdrew funds from her account that day was a strategic decision. Certainly, if the investigation had revealed that she had withdrawn funds as she stated, it would have undermined the principal defense that no funds were found on the Defendants. A petitioner's speculative claims and counsel's well-founded strategic decisions cannot establish entitlement to federal habeas relief on a claim of ineffective assistance of counsel. *See Tejada*, 941 F.2d at 1559. Accordingly, Haggins has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in finding that counsel was not ineffective in failing to investigate Johnson-House's bank records. Haggins is not entitled to relief on Ground Four.

**Ground Five**

Haggins contends that counsel was ineffective in objecting to the State's request that the jury be instructed on attempted robbery for count two, which charged Haggins and Jacobs with robbery for taking money from Johnson-House. (Doc. 9 Ex. 1 Vol. I at 25-26) During the charge conference, the State sought an instruction on attempted robbery. (Doc. 9 Ex. 1 Vol. VI at 650)[11] Under Florida law, a person is guilty of attempt when he does some act toward committing the crime that went beyond just thinking or talking about it, and he would have committed the crime except that someone prevented him from committing the crime or he failed. § 777.04(1), Fla. Stat. Counsel objected to

---

[11] The State argued that although a jury might find reasonable doubt as to the completed act because the $400.00 was never recovered, the evidence was sufficient to show that Haggins attempted to take the money. (Doc. 9 Ex. 1 Vol. VI at 650-52)

the proposed instruction on the basis that the evidence did not support attempted robbery.

(Doc. 9 Ex. 1 Vol. VI at 650) The trial court did not give the attempt instruction.

The state court summarily denied Haggins's claim that counsel was ineffective

(Doc. 9 Ex. 7 at 60):

> In ground three, the Defendant alleges counsel was ineffective for objecting to the State's request to include a jury instruction on attempted robbery regarding count two. The Defendant argues there is a reasonable probability that the jury would have returned a verdict of guilty for attempted robbery because the defendants were arrested at the scene, and $400 was never found. However, because the Defendant was found guilty of the completed offense, following the holding of *Sanders v. State*, 946 So.2d 953 (Fla. 2006), the Defendant cannot demonstrate prejudice for failure to request the jury instruction on attempted robbery. As such, ground three is denied.

Haggins has not shown that the state court unreasonably applied *Strickland* in denying his ineffective assistance claim. In accord with Florida's standard jury instructions, *see* Fla. Std. Jury Inst. 3.12 (Crim.), the jury was instructed that if "you return a verdict of guilty as to a particular defendant, it should be for the highest offense which has been proved beyond a reasonable doubt." (Doc. 9 Ex. 1 Vol. I at 76) The jury is presumed to have complied with this instruction. *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions); *Raulerson v. Wainwright*, 753 F.2d 869, 876 (11th Cir. 1985) ("Jurors are presumed to follow the law as they are instructed.").

In *Sanders*, relied on by the state postconviction court, the Florida Supreme Court held that under *Strickland*, "a defendant cannot, as a matter of law, demonstrate prejudice by relying on the possibility of a jury pardon" through conviction of a lesser offense when the jury has convicted the defendant of the greater offense. *Sanders*, 946 So.2d at 956. Further, "[a]n assessment of the likelihood of a result more favorable to the defendant

must exclude the possibility of arbitrariness, whimsy, caprice, 'nullification,' and the like. . . . The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision." *Strickland*, 466 U.S. at 695.

In convicting Haggins, the jury decided that the State's evidence showed beyond a reasonable doubt that he committed the completed act of robbery. Thus, the jury would not have been permitted under Florida law to find Haggins guilty only of an attempted act. Moreover, Haggins has not shown that the rejection of an ineffective assistance of counsel claim on the basis articulated in *Sanders* involves an unreasonable application of *Strickland*. *See Santiago v. Sec'y, Fla. Dep't of Corr.*, 472 F. App'x 888, 888-89 (11th Cir. 2012) (holding that the state court did not unreasonably apply *Strickland* when it denied a claim of ineffective assistance under *Sanders* as "the jury would not have been permitted to convict Santiago of the lesser included offenses because it had concluded that the evidence established that he was guilty of the greater offenses.").

As the state court found, therefore, Haggins's claim is too speculative to demonstrate prejudice as a result of counsel's objection to the attempt instruction. Haggins has not demonstrated that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. He is not entitled to relief on Ground Six.

**Ground Seven**

Haggins claims that counsel was ineffective in not objecting to the jury instruction on the principals theory because the State's charging document did not charge him as a principal. Respondent correctly contends that this claim is unexhausted because Haggins

26

failed to raise it in his postconviction motion. (Doc. 9 Ex. 6) Haggins cannot return to state court to bring the claim in an untimely postconviction motion. *See* Fla. R. Crim. P. 3.850(b). Accordingly, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138.

In his reply, Haggins argues that he overcomes the default by establishing the cause and prejudice exception under *Martinez v. Ryan*, 566 U.S. 1 (2012). In recognizing a narrow exception to the rule that ineffective assistance of postconviction counsel does not constitute cause to overcome a procedural default, *Martinez* holds, 566 U.S. at 17:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

To establish cause under *Martinez*, a petitioner must demonstrate that the defaulted ineffective assistance of trial counsel claim "is a substantial one, which is to say that [he] must demonstrate that the claim has some merit." *Id.* at 14. A claim that does not have any merit or that is wholly without factual support is not substantial. *See id.* at 15-16. A petitioner shows that his defaulted claim is substantial for *Martinez* purposes by demonstrating that reasonable jurists would find it debatable whether the petition states a valid claim of the denial of a constitutional right. *See Hittson v. GDCP Warden*, 759 F.3d 1210, 1269-70 (11th Cir. 2014) (citing *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) and *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). However, Haggins cannot meet the cause and prejudice exception because he has not shown that the defaulted claim of ineffective assistance is substantial.

Haggins's jury was instructed on the principals theory in accord with Florida's standard jury instructions. (Doc. 9 Ex. 1 Vol. I at 73); *see* Fla. Std. Jury Inst. (Crim. 3.5(a)).

Under Florida law, a person is liable as a principal if he "aids, abets, counsels, hires, or otherwise procures [any criminal offense] to be committed and such offense is committed[.]" § 777.011, Fla. Stat. An objection to the principals instruction on the basis that Haggins was not expressly charged under the principals statute would have been meritless. "Under Florida law, a person who is charged in an indictment or information with commission of a crime may be convicted on proof that she aided or abetted in the commission of such crime." *State v. Larzelere*, 979 So.2d 195, 215 (Fla. 2008). Accordingly, "if an information charges a defendant with a substantive crime, . . . and the proof establishes only that he was feloniously present, aiding, and abetting in the commission of the crime, a verdict of guilty as charged should be sustained." *Watkins v. State*, 826 So.2d 471, 474 (Fla. 1st DCA 2002). Therefore, the principals instruction may be given if supported by the evidence adduced at trial, regardless of whether the defendant was charged under the principals statute. *See Roberts v. State*, 813 So.2d 1016, 1017 (Fla. 1st DCA 2002) ("There was sufficient evidence adduced in the state's case-in-chief to support [the principals] instruction; accordingly, the trial court did not err in granting the request for such an instruction, despite the fact that Roberts was not specifically charged with aiding and abetting[.]").

Haggins has not demonstrated that the evidence adduced at trial was insufficient to warrant providing the principals instruction. To the contrary, the State's evidence showed that Haggins and Jacobs acted in concert during the events. They approached Everett together and entered the apartment together, where they required the victims to lie on the ground and began asking the victims where the money was, and Haggins

searched throughout the apartment at Jacobs's direction as Jacobs held the victims at gunpoint. (Doc. 9 Ex. 1 Vol. IV at 280-82, 284-86, 394-95, 397-400, 413-15)

Accordingly, an objection to the principals instruction on the basis the charging document did not allege principal status by citing the statute would have been meritless. Haggins fails to show a reasonable probability that the court would have sustained any such objection. Counsel cannot be deemed ineffective for declining to make a meritless argument. *See Bolender v. Singletary*, 16 F.3d 1547, 1473 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

As Haggins fails to show that his defaulted ineffective assistance claim is substantial, he does not overcome the default of this claim through the cause and prejudice exception under *Martinez*. Haggins does not argue or demonstrate that the fundamental miscarriage of justice exception applies. Accordingly, the procedural default of the claim raised in Ground Seven is not excused, and the claim is procedurally barred. Ground Seven does not warrant relief.

**Ground Eight**

Haggins claims that counsel was ineffective in not seeking a judgment of acquittal on the basis that the State failed to prove burglary in the manner charged. Haggins's claim is unexhausted because he did not raise it in his postconviction motion. (Doc. 9 Ex. 6) Since an attempt to raise the claim in a successive state postconviction motion would be futile, the claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. Haggins contends that he meets the cause and prejudice exception under *Martinez*.

Haggins has not shown that his defaulted ineffective assistance claim is substantial. Count five of the charging information alleges (Doc. 9 Ex. 1 Vol. I at 26-27) (emphasis added):

> MICHAEL LEE JACOBS AND LEONARD DIMARCUS HAGGINS, on the 28th day of September, 2010, in the County of Hillsborough and State of Florida, **did unlawfully enter or remain in a certain dwelling**, the property of KEANNA EVERETT, with intent to commit an offense therein while there was a human being, to-wit: WHITNEY JOHNSON-HOUSE, in said dwelling, and in the course of committing the said burglary, the said MICHAEL LEE JACOBS did make an assault or battery upon WHITNEY JOHNSON-HOUSE and/or KEANNA EVERETT.

The charging information is consistent with the language of § 810.02(1)(b), Fla. Stat., which defines burglary as follows:

> For offenses committed after July 1, 2001, "burglary" means:
>
> 1. Entering a dwelling, a structure, or a conveyance with the intent to commit an offense therein, unless the premises are at the time open to the public or the defendant is licensed or invited to enter; or
>
> 2. Notwithstanding a licensed or invited entry, remaining in a dwelling, structure, or conveyance:
>
> a. Surreptitiously, with the intent to commit an offense therein;
>
> b. After permission to remain therein has been withdrawn, with the intent to commit an offense therein; or
>
> c. To commit or attempt a forcible felony, as defined in s. 776.08.

Haggins claims that "the State charged 'remaining in' burglary in the information" but that "[t]he evidence presented by the State established that Petitioner unlawfully entered the dwelling without the owner's consent. In order to convict of 'remaining in' burglary the State must prove license or invited in; not unlawfully entered as the case at bar." (Doc. 1 at 17).

Pursuant to the definition in § 810.02(1)(b), Fla. Stat., however, burglary can be proven under either one of these two theories—"entering" or "remaining in" a structure or conveyance. Therefore, under Florida law, an "essential element" of burglary is "entering *or* remaining in." *Wilkes v. State*, 123 So.3d 632, 636 (Fla. 4th DCA 2013) (citing *State v. Waters*, 436 So.2d 66, 69 (Fla. 1983)) (emphasis added). To carry its burden on this element, the State only had to prove beyond a reasonable doubt that Haggins entered the apartment with intent to commit an offense therein. As Haggins concedes, and as the record demonstrates, the State presented significant evidence that Haggins did so. Accordingly, counsel had no valid basis to argue that a judgment of acquittal was warranted on grounds that the State failed to prove Haggins unlawfully remained in the apartment after a permissible entry. Counsel did not perform deficiently in forgoing this meritless argument. *Bolender*, 16 F.3d at 1473.

Haggins does not show that his defaulted ineffective assistance claim is substantial so as to establish the cause and prejudice exception to the procedural default under *Martinez*. Nor does he argue or establish that the fundamental miscarriage of justice exception applies. Accordingly, Haggins does not overcome the procedural default of the claim raised in Ground Eight. As Ground Eight is thus procedurally barred, it affords Haggins no relief.

Accordingly, it is **ORDERED** that Haggins's petition (Doc. 1) is **DENIED**. The **CLERK** is directed to enter a judgment against Haggins and to **CLOSE** this case.

## CERTIFICATE OF APPEALABILITY
## AND
## LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL

31

**IT IS FURTHER ORDERED** that Haggins is not entitled to a certificate of appealability. A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S. § 2253(c)(1). Rather, a court must first issue a certificate of appealability. Section 2253(c)(2) limits the issuing of a certificate of appealability "only if the applicant has made a substantial showing of the denial of a constitutional right." To merit a certificate of appealability, Haggins must show that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000); *Eagle v. Linahan*, 279 F.3d 926, 935 (11th Cir. 2001). Because he fails to make this showing, Haggins is not entitled to a certificate of appealability. Therefore, he is not entitled to appeal *in forma pauperis*.

Accordingly, a certificate of appealability is **DENIED**. Leave to proceed *in forma pauperis* on appeal is **DENIED**. Haggins must obtain permission from the circuit court to appeal *in forma pauperis.*

**DONE AND ORDERED** in Tampa, Florida, on this 10th day of August, 2020.

_____
MARY S. SCRIVEN
UNITED STATES DISTRICT JUDGE